# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| MARGARET C. PAPPAS,<br>   Plaintiff | )<br>)<br>) | |
| v. | ) | Civil Action No. 1:11cv00028 |
| | ) | |
| MICHAEL J. ASTRUE,<br>  Commissioner of Social Security,<br>   Defendant | )<br>)<br>)<br>) <br>) | **REPORT AND RECOMMENDATION**<br><br>BY: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Margaret C. Pappas, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Pappas protectively filed an application[1] for DIB on May 29, 2007, alleging disability as of April 15, 2007, due to rheumatoid arthritis. (Record, ("R."), at 109-16, 117-19, 131, 135.) The claim was denied initially and on reconsideration. (R. at 69-71, 76-80, 82-84.) Pappas then requested a hearing before an administrative law judge, ("ALJ"). The hearing was held on July 8, 2009, at which Pappas was represented by counsel. (R. at 22-56.)

By decision dated September 1, 2009, the ALJ denied Pappas's claim. (R. at 12-21.) The ALJ found that Pappas met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2011.[2] (R. at 14.) The ALJ also found that Pappas had not engaged in substantial gainful activity since April 15, 2007, the alleged onset date. (R. at 14.) The ALJ found that the medical evidence established that Pappas suffered from severe impairments,

---

[1] Pappas also filed an application for Supplemental Security Income, ("SSI"), but this claim was denied because of income ineligibility. (R. at 63-66, 117-19.)

[2] Therefore, Pappas must show that she became disabled between April 15, 2007, the amended alleged onset date, and December 31, 2011, the date last insured, in order to be entitled to DIB benefits.

namely rheumatoid arthritis, degenerative disc disease and history of bilateral carpal tunnel syndrome status post release surgeries, but he found that Pappas did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14-15.) The ALJ also found that Pappas had the residual functional capacity to perform light work[3] that required no more than occasional climbing of ramps and stairs, balancing, kneeling, and crawling, and that did not require her to climb ladders, ropes or scaffolds or to work around fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 15-16.) Thus, the ALJ found that Pappas was able to perform her past work as an assistant manager in a retail store. (R. at 20.) In addition, based on Pappas's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that she could perform, including jobs as a retail sales clerk, a cashier and a mail clerk. (R. at 20-21.) Thus, the ALJ found that Pappas was not under a disability as defined under the Act and was not eligible for benefits. (R. at 21.) *See* 20 C.F.R. §§ 404.1520(f),(g) (2011).

After the ALJ issued his decision, Pappas pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 1-6.) Blevins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2011). The case is before this court on Pappas's motion for summary judgment filed

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2011).

September 15, 2011, and the Commissioner's motion for summary judgment filed October 17, 2011.

## *II. Facts*

Pappas was born in 1956, (R. at 26, 109), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). She has a high school education and past relevant work experience as an assistant manager in a clothing store. (R. at 26, 136, 142.)

Vocational expert, Robert Jackson, was present and testified at Pappas's hearing. (R. at 49-56.) Jackson classified Pappas's work as an assistant manager in a retail clothing store, as generally performed, as light and semi-skilled. (R. at 51.) However, Jackson classified this job, as actually performed, as medium work[4] as since Pappas included stocking as part of her duties. (R. at 51.) Jackson testified that a hypothetical individual of Pappas's age, education and work history who could perform light work, who could occasionally climb ramps and stairs, balance, kneel and crawl, who could frequently stoop and crouch, who could not climb ladders, ropes and scaffolds and who should avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, dangerous moving machinery and unprotected heights could perform Pappas's past work as an assistant manager, without the stocking component. (R. at 52-53.) Jackson stated that such an individual could

---

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do light and sedentary work. *See* 20 C.F.R. § 404.1567(c) (2011).

-4-

perform Pappas's past work as an assistant manager, without the stocking component. (R. at 53.) Jackson stated that a significant number of other jobs existed in the national economy that such an individual could perform, including jobs as a retail sales clerk, a cashier and a counter clerk. (R. at 53-54.) When asked to assume an individual who could occasionally lift and carry items weighing up to 25 pounds and frequently lift and carry items weighing up to 20 pounds, who could occasionally climb, kneel and crawl and who should avoid fumes, Jackson stated that the jobs previously mentioned could be performed, with the exception of counter clerk. (R. at 54.) He stated that in addition to the above mentioned jobs, such an individual could perform the job of a mail clerk. (R. at 55.) When asked about the same individual, but would have problems with gripping and fine manipulation, Jackson stated that all of the jobs identified, with the exception of the mail clerk job, would be eliminated. (R. at 55.)

In rendering his decision, the ALJ reviewed medical records from Dr. Victor Freund, M.D.; University of Virginia; Smyth County Community Hospital; Heartland Rehabilitation Services; Dr. Albertine de Wit, M.D.; Dr. William Humphries, M.D.; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Richard Surrusco, M.D., a state agency physician; and Dr. Timothy G. McGarry, M.D. Pappas's attorney also submitted records from Dr. de Wit to the Appeals Council.[5]

---

[5] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-6), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

-5-

On May 22, 1998, Dr. Albertine de Wit, M.D., a rheumatologist, evaluated Pappas. (R. at 250-53.) Dr. de Wit diagnosed rheumatoid arthritis. (R. at 253.) Between 1998 and 2006, Pappas's visit with Dr. de Wit decreased over time, and it was reported that Pappas's rheumatoid arthritis was fairly well-controlled; medication improved her stiffness; at times, she did not have active joint disease; and Pappas reported that she was very active at home and at work. (R. at 234-35, 239, 244-45.) On March 4, 2005, Dr. de Wit reported that Pappas's condition was stable. (R. at 232.) On October 13, 2005, an MRI of Pappas's lumbar spine showed a small right-sided herniated nucleus pulposus at the L1-L2 level, a herniation of the intervertebral disc and bulging at multiple mid and lower lumbar levels with facet joint degeneration. (R. at 197-98, 291-92, 311-12.) X-rays of Pappas's lumbar spine showed severe right focal lumbar scoliosis between the L2-L5 levels associated with significant asymmetric disc space narrowing of the L1-L2 level on the right side and the L3-L4 and L5-S1 levels on the left side. (R. at 199-200, 293.) These x-rays also showed significant lateral marginal osteophytes on the right side at the L1-L2 level and on the left side at the L3-L4 and L4-L5 levels with possible extension into the neuroforamina or neural canal at the L3-L4 level. (R. at 200.) On March 1, 2006, Pappas complained of pain and swelling in multiple joints. (R. at 231.) She stated that she felt extremely tired and that she could not function. (R. at 231.) She reported working four days a month. (R. at 231.) Dr. de Wit diagnosed osteoarthritis in addition to rheumatoid arthritis. (R. at 231.) Dr. de Wit advised Pappas to consider filing for social security disability. (R. at 231.)

On January 29, 2008, an x-ray of Pappas's right hand showed rheumatoid

-6-

disease at the second through fourth distal interphalangeal joints joints. (R. at 307.) Mild hyportrophic changes suggestive of a degenerative joint dislocation also was noted. (R. at 308, 319-20.) X-rays of Pappas's left hand showed focal degenerative disease at the second metacarpophalangeal joint, mild or early rheumatoid arthritis in the inner phalangeal joints and narrowing of the metacarpophalangeal joints. (R. at 308, 320.) In February 2008, Dr. de Wit drafted a note stating that Pappas would be unable to perform jury duty. (R. at 368.) On August 12, 2008, Pappas reported that she was feeling somewhat better. (R. at 366.) Dr. de Wit reported that Pappas's rheumatoid arthritis was better controlled with medication. (R. at 366.) Dr. de Wit reported that Pappas was permanently unable to engage in any type of gainful employment. (R. at 366.) On March 30, 2009, Pappas exhibited only slight limitation of motion, and Dr. de Wit reiterated that Pappas would be unable to engage in any type of employment. (R. at 365.) On June 15, 2009, Pappas continued to report severe morning stiffness and discomfort in her neck, shoulders, wrists, small joints of the hands, both feet and knees. (R. at 364.) Dr. de Wit reported that Pappas had fair range of motion in her neck and limited range of motion in both shoulders and wrists. (R. at 364.) Dr. de Wit reported that Pappas's symptoms improved with Humira, but continued to be mildly active. (R. at 364.) On October 4, 2010, Pappas reported persistent morning stiffness, soreness in mulitple joints, chronic cough and shortness of breath on exertion. (R. at 388.) Dr. de Wit diagnosed rheumatory lung disease in combination with chronic obstructive pulmonary disorder. (R. at 388.)

On December 6, 2005, Dr. Victor Freund, M.D., saw Pappas for evaluation

of leg pain. (R. at 209-10.) Dr. Freund reported that Pappas did not appear to be depressed. (R. at 210.) Pappas walked with a normal gait, and she was able to stand on her heels and toes without significant difficulty. (R. at 210.) Tandem gait was intact. (R. at 210.) She had a good range of motion in the lumbar spine. (R. at 210.) Pappas's sensation was grossly intact in the lower extremities bilaterally with normal strength. (R. at 210.) Straight leg raising tests were negative bilaterally. (R. at 210.) Dr. Freund reviewed x-rays and an MRI of Pappas's lumbar spine and noted that she had some scoliosis throughout the lumbar region, some vacuum disc phenomenon, a lot of spurring and some lateral marginal osteophytes which caused some lateral recessed stenosis at the L3-L4 and L4-L5 levels. (R. at 197-200, 210.) Dr. Freund diagnosed lumbar scoliosis with radiculopathy and degenerative disc disease and rheumatoid arthritis. (R. at 210.) On February 15, 2006, Dr. Freund noted that Pappas had a positive straight leg raise test on the left. (R. at 212.) She had symmetric tone and bulk and normal strength in the lower extremities. (R. at 212.) Her gait was antalgic, favoring the left leg, and her motor and sensory examinations were intact to the lower extremities bilaterally. (R. at 212.) Dr. Freund diagnosed scoliosis with history of rheumatoid arthritis. (R. at 212.)

On April 17, 2006, Pappas was seen at the University of Virginia by Dr. Rod J. Oskouian, M.D. (R. at 214-16.) X-rays showed an s-shaped thoracolumbar scoliosis, with the thoracolumbar junction scoliosis improving slightly as Pappas bent to the left and a mild pelvic tilt. (R. at 216.) Dr. Oskouian reported that Pappas's symptoms were a result of her L4-L5 nerve root being compressed at the apex of her scoliosis in her lumbar spine. (R. at 214.) He noted that Pappas's

-8-

neurological examination was intact. (R. at 215.) He prescribed physical therapy. (R. at 215.)

On August 21, 2007, Dr. William Humphries, M.D., examined Pappas at the request of Disability Determination Services. (R. at 275-79.) Pappas's back had a slightly reduced range of motion with mild dorsal kyphosis. (R. at 276.) No paravertebral muscle spasm was noted. (R. at 276.) Pappas's joint range of motion of the upper extremities was slightly reduced in both shoulders. (R. at 276.) Dr. Humphries reported that Pappas had some mild synovial thickening of some of the metacarpophalangeal and interphalangeal joints of the fingers of both hands with some mild reduction of motion. (R. at 276.) Pappas's lower extremity range of motion was within normal limits in both hips, slightly reduced in both knees and within normal limits in both ankles. (R. at 277.) Dr. Humphries noted some mild synovial thickening of some of the interphalangeal joints in the toes of both feet and some mild metatarsus adductus deformaties of the second through fifth toes bilaterally. (R. at 277.) Pappas had normal strength in both lower extremities, and there was no motor or sensory loss. (R. at 277.) X-rays of Pappas's left knee were normal. (R. at 274, 342.) X-rays of Pappas's left hand showed some arthritic change at the second metacarpal/phalangeal joint, which was more suggestive of gout rather than rheumatoid arthritis. (R. at 274, 342.)

Dr. Humphries diagnosed hypertension, rheumatoid arthritis, by history, mild degenerative joint disease in both hands and feet, mild asthmatic bronchitis and degenerative disc disease and degenerative joint disease of the lumbar spine.

-9-

Case 1:11-cv-00028-JPJ-PMS   Document 15   Filed 04/09/12   Page 9 of 17   Pageid#: 460

(R. at 278.) Dr. Humphries opined that Pappas would be limited to sitting for up to six hours in an eight-hour workday and to standing and walking six hours in an eight-hour workday. (R. at 278.) He opined that Pappas could occasionally lift items weighing up to 25 pounds and frequently lift items weighing up to 10 pounds. (R. at 278.) Pappas was limited to occasional climbing, kneeling and crawling. (R. at 278.) Dr. Humphries found that Pappas should avoid fumes, and he placed no restrictions regarding stooping or crouching or working around heights or hazards. (R. at 278.)

On August 30, 2007, Dr. Robert McGuffin, M.D., a state agency physician, reported that Pappas had the residual functional capacity to perform light work. (R. at 280-86.) Dr. McGuffin reported that Pappas could occasionally climb, balance, kneel and crawl and frequently stoop and crouch. (R. at 282.) No manipulative, visual or communicative limitations were noted. (R. at 282-83.) Dr. McGuffin noted that Pappas should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 283.)

On April 10, 2008, Dr. Richard Surrusco, M.D., a state agency physician, reported that Pappas had the residual functional capacity to perform light work. (R. at 322-29.) Dr. Surrusco reported that Pappas could occasionally climb, balance, kneel and crawl and frequently stoop and crouch. (R. at 324.) No manipulative, visual or communicative limitations were noted. (R. at 324-25.) Dr. Surrusco reported that Pappas should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 325.)

On February 5, 2009, Dr. Timothy G. McGarry, M.D., saw Pappas for right carpal tunnel syndrome. (R. at 337-39.) On February 13, 2009, Pappas underwent right carpal tunnel release. (R. at 340-41.) On April 16, 2009, follow-up examination revealed Pappas's incisions had "healed beautifully." (R. at 334.) She had negative Tinel's. (R. at 334.) Pappas contined to describe diminished sensation in the entire ring finger and thumb. (R. at 334.) Dr. McGarry explained that it may take several months before the nerve functioned as it should. (R. at 334.)

## *III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2011); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2011).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether

-11-

substantial evidence supports the Commissioner′s decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Pappas argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-12.) In particular, Pappas argues that the ALJ erred by failing to include any limitations in regard to her ability to use her upper extremities and hands. (Plaintiff's Brief at 12-13.) Pappas argues that the ALJ also erred by failing to properly consider her allegations of pain. (Plaintiff's Brief at 13-15.) Finally, Pappas argues that the ALJ erred by failing to give controlling weight to her treating physician, Dr. de Wit. (Plaintiff's Brief at 15-17.)

The ALJ in this case found that Pappas had the residual functional capacity to perform light work that required no more than occasional climbing of ramps and stairs, balancing, kneeling, and crawling, and that did not require her to climb ladders, ropes or scaffolds or to work around fumes, odors, dusts, gases, poor ventilation and hazards. (R. at 15-16.) Based on my review of the record, I find that substantial evidence exists in the record to support this finding. I also find that substantial evidence exists to support the ALJ's weighing of the medical evidence.

The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2)

-12-

Case 1:11-cv-00028-JPJ-PMS Document 15 Filed 04/09/12 Page 12 of 17 Pageid#: 463

(2011). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig,* 76 F.3d at 590.

The ALJ noted that he was giving very little weight to the opinion of Dr. de Wit because he offered no function-by-function assessment of Pappas's limitations upon which he based his opinions that Pappas could not work. (R. at 19.) The ALJ noted that Dr. de Wit described Pappas has having only "mild" rheumatory arthritis and that his examinations found Pappas to be neurologically intact. (R. at 19.) The ALJ noted that Dr. Humphries's examination and Pappas's treatment notes do not support Dr. de Wit's opinion. (R. at 19.) The ALJ also noted that Pappas's activities of daily living were consistent with light work. (R. at 19.) The ALJ gave greater weight to the opinions of the state agency physicians and to Dr. Humphries's assessment. (R. at 20.)

In August 2007, Dr. Humphries noted that the range of motion of Pappas's joints was only slightly/mildly reduced and opined that she would be able to work with some limitations consistent with the ALJ's residual functional capacity assessment. (R. at 278.) In August 2007 and April 2008, Drs. McGuffin and Surrusco, respectively, opined that Pappas could perform light work with some additional postural and environmental limitations. (R. at 280-86, 322-29.) In February 2009, Dr. McGarry noted that Pappas had good grip strength and, despite some right hand numbness, was otherwise neurovascularly intact. (R. at 338.)

-13-

Based on this, I find that substantial evidence exists to support the ALJ's finding with regard to Pappas's residual functional capacity.

Pappas also argues that the ALJ erred by failing to consider her allegations of pain. (Plaintiff's Brief at 13-15.) I find that the ALJ considered Pappas's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *Craig*, 76 F.3d at 594. Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers....

76 F.3d at 595.

-14-

The ALJ noted that Pappas showed no weight loss due to loss of appetite from increased pain or weight gain due to inactivity from pain, muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest or adverse neurological signs. (R. at 19.) The ALJ noted that the record failed to demonstrate the presence of any pathological clinical signs, significant medical findings or any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent Pappas from engaging in any work on a sustained basis. (R. at 19.) The ALJ further noted that treatment notes described Pappas as a "healthy looking woman," (R. at 19, 344), who was "well-developed and well-nourished … who looks her stated age and appears in no acute distress," (R. at 19, 345), who is "an alert, pleasant, white female in no distress who answers questions appropriately and relatese well to the examiner and is cooperative for the exam," (R. at 19, 276), who is a "well-developed, well-nourished, pleasant lady in no acute distress … who stand with normal station and walks with no appreciable limp." (R. at 19, 338.) In addition, the ALJ considered Pappas's activities of daily living. (R. at 18.) Based on this, I find that the ALJ properly considered Pappas's complaints of pain.

It is for all of these reasons that I conclude that the ALJ's finding that Pappas was not disabled is supported by substantial evidence.

**PROPOSED FINDINGS OF FACT**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists in the record to support the

Commissioner's weighing of the medical evidence;

2. Substantial evidence exists to support the Commissioner's residual functional capacity finding; and

3. Substantial evidence exists in the record to support the Commissioner's finding that Pappas was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Pappas's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.
>
> Failure to file timely written objections to these proposed findings and

recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:    April 9, 2012.

                                          s/ *Pamela Meade Sargent*
                                          UNITED STATES MAGISTRATE JUDGE